UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KENNETH RAY MEYER,

      Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

      Defendant.

17-CV-515
DECISION AND ORDER

---

On June 8, 2017, the plaintiff, Kenneth Ray Meyer, brought this action under the Social Security Act ("the Act"). He seeks review of the determination by the Commissioner of Social Security that he was not disabled. Docket Item 1. On January 29, 2018, Meyer moved for judgment on the pleadings, Docket Item 11; on April 30, 2018, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 15; and on May 21, 2018, Meyer replied, Docket Item 16.

For the reasons stated below, this Court grants Meyer's motion in part and denies the Commissioner's cross-motion.

## BACKGROUND

### I. PROCEDURAL HISTORY

On August 15, 2013, Meyer applied for disability insurance benefits. Docket Item 7 at 17. He claimed that he had been disabled since July 1, 2013, due to hepatitis C, high blood pressure, and anxiety. Docket Item 7 at 92.

On December 9, 2013, Meyer received notice that his application was denied because he was not disabled under the Act. Docket Item 7 at 17. He requested a hearing before an administrative law judge ("ALJ"), which was held on January 22, 2016. Docket Item 7 at 13. The ALJ then issued a decision on September 19, 2016, confirming the finding that Meyer was not disabled. Docket Item 7 at 27. Meyer appealed the ALJ's decision, but his appeal was denied, and the decision then became final. Docket Item 7 at 5.

## II. RELEVANT MEDICAL EVIDENCE

The following summarizes the medical evidence most relevant to Meyer's claim. Meyer was examined by a number of providers; however, only the following are most relevant to the claim of disability here: Lynne S. Ross, M.D.; Brynn Simmons, P.A.-C.; Saman Chubineh, M.D.; Donna Miller, D.O.; Stephanie Doyle, L.M.S.W.; Deborah Wrazin, L.M.S.W.; Dr. Hak Ko[1]; and Dr. Dedenia Yap.[2]

### A. Lynne Ross, M.D.

Dr. Ross was Meyer's primary care physician, and the record includes her treatment notes from 2013 through 2015. Dr. Ross treated Meyer for several conditions, including his hypertension and chronic hepatitis C. *See, e.g.*, Docket Item 7 at 233. Most relevant here, she consistently found that Meyer's anxiety was "stable," *see, e.g.*, Docket Item 7 at 286, but she did not say exactly what that meant. For

---

[1] The signed report from this evaluation does not indicate Dr. Ko's specialty or include any degree information.

[2] The signed opinion from this evaluation indicates that Dr. Yap is a psychiatrist, but it does not include postnominals or any other degree information.

2

example, although she opined that Meyer's anxiety would prevent him from sitting on a jury, *id.* at 53, she did not opine on whether it would affect his ability to work. Dr. Ross treated Meyer's anxiety disorder with a Valium prescription, Docket Item 7 at 234, and she referred him to the Dale Association Counseling and Treatment Center for mental health counseling, Docket Item 7 at 401.

### B. Brynn Simmons, P.A.-C.

P.A. Simmons treated Meyer as the physician assistant to Dr. Ross between 2014 and 2016. P.A. Simmons found that Meyer's anxiety caused significant limitations on his ability to work. Docket Item 7 at 265.

### C. Saman Chubineh, M.D.

Dr. Chubineh treated Meyer's Hepatitis C on referral from Dr. Ross. Docket Item 7 at 322. Dr. Chubineh noted that Meyer did not have symptoms of anxiety or depression. Docket Item 7 at 321.

### D. Donna Miller, D.O.

Dr. Miller, a consulting examiner, evaluated Meyer on November 14, 2013. She diagnosed Meyer with hepatitis C, hypertension, tobacco abuse, marijuana use, and chronic left knee pain. Docket Item 7 at 255-56. Dr. Miller's report does not note any mental health impairment or issues.

### E. Stephanie Doyle, L.M.S.W.

Ms. Doyle provided mental health counseling to Meyer through the Dale Association beginning in February 2015. During her treatment of Meyer, Ms. Doyle noted that he suffered from, among other things, "[p]ersistent disturbances of mood or affect" and "[p]erceptual or thinking disturbances." Docket Item 7 at 392.

### F. Deborah Wrazin, L.M.S.W.

Ms. Wrazin also provided Meyer with mental health counseling though the Dale Association between 2013 and 2015. Throughout her counseling, Ms. Wrazin extensively documented Meyer's anxiety symptoms including, among other things, memory and sleep difficulties, daily racing thoughts, and self-isolation. *See, e.g.*, Docket Item 7 at 326-29.

### G. Dr. Hak Ko

Dr. Ko cosigned two mental health counseling reports from Ms. Wrazin's sessions with Meyer at the Dale Association. One of the cosigned reports assessed Meyer's anxiety at a GAF score of 50, which indicates severe impairment. Docket Item 7 at 332-35.

### H. Dr. Dedenia Yap

Dr. Yap, a psychiatrist with the Dale Association, conducted a mental health evaluation of Meyer and assessed a GAF score of 55 (moderate symptoms) with partial to poor insight and judgment. Docket Item 7 at 331.

### III. THE ALJ'S DECISION

In denying Meyer's application, the ALJ evaluated Meyer's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 404.1520(a)(4).

4

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the claimant's severe impairment or impairments meet or equal one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that none of the severe impairments meet any in the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, he or she is not disabled and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(v), (g). More specifically, the Commissioner bears the burden of proving that the claimant "retains a residual functional capacity to perform alternative

5

substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

Here, at step one, the ALJ found that Meyer had not engaged in substantial gainful activity since his alleged disability onset date. Docket Item 7 at 19. At step two, the ALJ found that Meyer had an anxiety disorder that constituted a severe impairment under 20 C.F.R. § 404.1520(c). Docket Item 7 at 19. At step three, the ALJ concluded that Meyer's severe impairment did not meet or medically equal the criteria of any impairments in 20 CFR Part 404, Subpart P, Appendix 1. Docket Item 7 at 21.

To determine the plaintiff's RFC at step four, the ALJ considered the medical records, Meyer's hearing testimony about his symptoms, and whether that testimony was consistent with the objective medical evidence. Docket Item 7 at 22-25. The ALJ found that Meyer's "statements concerning the intensity, persistence and limiting effects" of his anxiety were "not entirely consistent with the medical evidence . . . in the record." Docket Item 7 at 23. The ALJ specifically cited Exhibits 4F and 9F, medical records from Dr. Ross, which indicate that "the claimant's anxiety disorder was reported to be stable." Docket Item 7 at 23

The ALJ then determined that Meyer's RFC included the ability to "perform a full range of work at all exertional levels" but was "compromised by nonexertional limitations." Docket Item 7 at 26. Those limitations meant that Meyer can "occasionally work with the public and have constant contact with co-workers and supervisors; can understand and carry out simple instructions; can make judgements commensurate with functions of unskilled work with SVP 2 or lower; and can respond appropriately to

6

supervision, coworkers and usual work situations and deal with changes in a routine work setting." Docket Item 7 at 22.

In light of that RFC determination, the ALJ concluded that Meyer was unable to perform any past relevant work through the last date insured. Docket Item 7 at 25. But at step 5, based on the testimony of the vocational expert, the ALJ found that Meyer could perform jobs that exist in significant numbers in the national economy, such as laundry laborer and auto detailer. Docket Item 7 at 26.

## **LEGAL STANDARDS**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an

7

unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

**DISCUSSION**

Meyer makes several arguments that the ALJ erred. Docket Item 11-1 at 16. Among them, he argues that the ALJ "failed to explain the weight he accorded" to the respective medical opinions of Drs. Ko and Yap, Docket Item 11-1 at 22, and improperly weighed the other source opinions of PA Simmons, Ms. Doyle, and Ms. Wrazin. Docket Item 11-1 at 19. Meyer says that the ALJ's RFC determination therefore is not supported by substantial evidence. Docket Item 11-1 at 19. This Court agrees that the ALJ failed to adequately explain the weight given to the opinions of PA Simmons, Ms. Wrazin, and Ms. Doyle and also finds that the ALJ did not adequately explain how those opinions factored into his RFC determination. Those errors require remand.[3]

When determining a plaintiff's RFC, the ALJ must evaluate every medical opinion received, "[r]egardless of its source." 20 C.F.R. § 404.1527(c). That evaluation requires the ALJ to resolve "[g]enuine conflicts" among the sources. *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008) (citation omitted). In so doing, the ALJ must "confront the evidence in [the plaintiff's] favor and explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). In addition, the ALJ should explain the weight assigned to the opinions of non-acceptable medical sources—that is, other sources— that "may have an effect on the outcome of the case," 20 C.F.R. § 404.1527(f)(2), in a

---

[3] Because the "remaining issues ... may be affected by the ALJ's treatment of this case on remand," this Court does not reach them. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

way that "allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning." SSR 06-03P, at *6. In other words, the ALJ must construct "an accurate and logical bridge" between the information in the record and the conclusion that the claimant is not disabled. *Thomas*, 826 F.3d at 961 (quoting *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013)).

20 C.F.R. § 404.1527(c) enumerates several factors as a guide to articulate the ALJ's reasoning:

> [1] the length and frequency of the treating relationship; [2] the nature and extent of the relationship; [3] the amount of evidence the source presents to support his or her opinion; [4] the consistency of the opinion with the record; [5] the source's area of specialization; [6] and any other factors the claimant brings to the ALJ.

*Tolliver v. Astrue*, 2013 WL 100087, at *3 (W.D.N.Y. Jan. 7, 2013) (quoting *Drennen v. Astrue*, 2012 WL 42496, at *3 (W.D.N.Y. Jan. 9, 2012)); s*ee e.g.*, *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (remanding when the ALJ "improperly excluded evidence . . . [that was] significantly more favorable to the claimant than the evidence considered."). Using those factors to explain the ALJ's reasoning is more than just a good idea. In *Tolliver*, for example, the court remanded when the ALJ failed to use those factors to explain why he assigned little weight to the opinion of a nurse practitioner who saw the patient far more frequently than did the treating physician. 2013 WL 100087, at *3; *see also* 20 C.F.R. § 404.1527(f)(2) ("Depending on the particular facts in a case, . . . an opinion from a medical source who is not an acceptable medical source . . . may outweigh the medical opinion of an acceptable medical source, including the medical opinion of a treating source.").

9

Here, Meyer argues that the ALJ erred by assigning little weight to the "other source" evaluations by P.A. Simmons and Ms. Doyle of the Dale Association, both of whom found limitations greater than those the ALJ found. Docket Item 11-1 at 26. The ALJ's decision to afford "little weight" to the opinions of PA Simmons and Ms. Doyle, Docket Item 7 at 20, is not *per se* erroneous: both PA Simmons and Ms. Doyle are "other source[s]" under the regulations, and the ALJ was therefore "free to discount" their opinions "in favor of the objective findings of other medical doctors." *Genier v. Astrue*, 298 F. App'x 105, 108–09 (2d Cir. 2008). But the ALJ should have adequately explained why he rejected this evidence, which is significantly more favorable to Meyer and which may well "have an effect on the outcome of the case." 20 C.F.R. § 404.1527(f). And the ALJ failed to do that. *See e.g.*, Docket Item 7 at 25.

The ALJ supported his decision to assign little weight to PA Simmons's assessment mainly with Dr. Chubineh's treatment notes that the plaintiff's medical "[f]indings remained stable in January 2016, . . . with no depressive or anxiety symptoms present." Docket Item 7 at 20.[4] But there is reason to doubt the accuracy of Dr. Chubineh's discussion of Meyer's anxiety. First, on the same page of this same opinion, Dr. Chubineh also indicated that "severe anxiety" was one of Meyer's "[o]ngoing medical problems." Docket Item 7 at 377. Moreover, Dr. Chubineh's treatment notes on the subject are cryptic and conclusory: "no depressive or anxiety

---

[4] There is some ambiguity as to the correct date of Dr. Chubineh's report. The report itself states that Dr. Chubineh's encounter with the plaintiff was June 25, 2015. But the ALJ cites the report to support his assertion that the plaintiff was not experiencing symptoms of anxiety or depression six months later—in January 2016. *See* Docket Item 7 at 378.

10

symptoms." *Id.* That is not surprising, given that Dr. Chubineh is a gastroenterologist and therefore likely not focused on Meyer's anxiety and depression.

PA Simmons's assessments, on the other hand, are more detailed and favorable to Meyer, and she assisted Meyer's primary care physician in treating him over a two-year period. In February 2014, for example, PA Simmons found that Meyer's anxiety caused confusion, limited his ability to interact with others, and would require him to take more than 10 unscheduled breaks during a regular work day. Docket Item 7 at 265. She also found Meyer's anxiety to be so severe that it left him able to work less than 10 hours per week. Docket Item 7 at 261. But the ALJ did not address those findings, and his reasoning does not adequately "confront" the inconsistency between Dr. Chubineh and PA Simmons in the record. *Thomas*, 826 F.3d at 961.

The ALJ assigned little weight to Ms. Doyle's opinions because

although they were made in the context of a treating relationship[, d]uring the period at issue, there is no indication that the claimant experienced any of the reported symptoms of anxiety, and mental status examination with essentially unremarkable [sic] except for limitations in insight and judgement [sic]. In addition, the consultative examiner did not find more than mild limitations, and the claimant has reported to Dr. Ross that his anxiety remains stable with medication use.

Docket Item 7 at 24-25. The ALJ is correct in noting that at several points during her treatment, Dr. Ross assessed Meyer's anxiety as stable. *See, e.g.*, Docket Item 7 at 286. But like the opinion of Dr. Chubineh, Dr. Ross's opinions do not include any discussion of Meyer's mental health symptoms or even a perfunctory explanation of the basis for Dr. Ross's findings about Meyer's anxiety. *See, e.g.*, Docket Item 7 at 271, 273, 281; *see also* 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").

11

Rather, the reports simply use the word "stable" in the one line devoted to Meyer's depression and anxiety.

These opinions stand in stark contrast to the observations of Ms. Doyle, whose evaluations of Meyer extensively document his symptoms of anxiety. In January 2016, for example, Ms. Doyle recorded Meyer's symptoms to include: "[i]llogical thinking," "[e]motional withdrawal," and "[r]ecurrent[,] severe panic attacks". Docket Item 7 at 391-95. Ms. Doyle additionally found that Meyer's anxiety rendered him "seriously limited" in his ability to "[u]nderstand and remember detailed instructions" and "[i]nteract appropriately with the general public." Docket Item 7 at 394.

Reports from another Dale Association provider, Ms. Wrazin, corroborate Meyer's severe anxiety-related symptoms. For example, during one treatment session in June 2014, Ms. Wrazin documented that Meyer reported feeling that his anxiety was "out of control." Docket Item 7 at 411. During another session in October 2014, Ms. Wrazin recorded Meyer's complaint that his mental health symptoms were "taking over his life." Docket Item 7 at 417. In November 2014, Meyer also discussed "significant gaps in [his] focus and concentration" and his struggle with "memory issues" with Ms. Wrazin. Docket Item 7 at 420.

Of course, the ALJ was not obligated to accept the opinions of the Dale Association providers, especially because they were not physicians and therefore not "acceptable" medical sources. *See Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (citing 20 C.F.R. § 416.913(a) and SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2009)). But the ALJ's failure to address these other source opinions in any detail did not build "an accurate and logical bridge" between the medical evidence and the ALJ's

12

conclusion, *Thomas*, 826 F.3d at 961 (quoting *Roddy*, 705 F.3d at 636), especially when the Dale Association providers were the primary mental health providers caring for Meyer. And there is good reason to doubt whether Dr. Ross's and Dr. Chubineh's largely conclusory anxiety-treatment notes support the ALJ's conclusion that there "is no indication that the claimant experienced any of the reported symptoms of anxiety," Docket Item 7 at 20, especially when the treatment notes of other providers detail such symptoms.

What is more, other opinions that the ALJ did not address also include documentation of Meyer's mental health symptoms. These include evaluations by Dr. Yap in 2014 and Dr. Ko in 2015 that assessed Meyer's GAF score in the 50-55 range, suggesting moderate to severe symptoms. Docket Item 7 at 331, 357.

Because the ALJ failed to adequately articulate the reasoning behind his decision to assign little weight to the mental health opinions discussed above, he did not adequately "confront" the evidence in Meyer's favor, or even approximate the standard contained in 20 C.F.R. § 404.1527(f). *Thomas*, 826 F.3d at 961. In other words, he did not build a bridge between the evidence and his conclusion in a way that permits adequate review. Because the opinions at issue were central to the plaintiff's claim of disability, any error was not harmless, and remand is required. On remand, if the ALJ wishes to assign little weight to PA Simmons's and the mental health providers' findings, he must articulate and support the reasoning behind his decision in a way that satisfies 20 C.F.R. §§ 404.1527(c) and (f) or otherwise makes his reasoning clear for subsequent review. 20 C.F.R. § 404.1527(f)(2).

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 15, is DENIED, and Meyer's motion for judgment on the pleadings, Docket Item 11, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: July 31, 2019
Buffalo, New York

*s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE